**Greg W. SHOULTZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–9912–CR–436**

Court of Appeals of Indiana.

Sept. 22, 2000.

Rehearing Denied Nov. 15, 2000.

S. Anthony Long, Boonville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BARNES, Judge

### Case Summary

Greg W. Shoultz appeals his convictions for resisting law enforcement as a class A misdemeanor and disorderly conduct, a class B misdemeanor. We reverse both convictions.

### Issues

The sole issue for our review is whether there was sufficient evidence to support Shoultz' convictions. Within that issue are questions of constitutional dimension: (1) whether the arresting officer in this case used excessive force against Shoultz in violation of the Fourth Amendment of the United States Constitution; and (2) whether Shoultz' disorderly conduct conviction violates Article I, Section 9 of the Indiana Constitution.

### Facts

The facts most favorable to the State follow. In the early morning hours of December 27, 1997, Patrol Officer Tony Mayhew observed a motorcyclist making what he believed to be an unsafe start.[1] Mayhew followed the motorcyclist to the property of the Grim Reaper motorcycle club. After Mayhew entered the front yard of the clubhouse in order to question the motorcyclist, Shoultz came out of the clubhouse and began yelling and swearing at Mayhew. Shoultz demanded to know what Mayhew was doing on the property, why he was hassling his "brother" motorcyclist, Record p. 172, and whether he had a warrant to be on the property. Mayhew told Shoultz that he did not need a warrant to be on the property and ordered Shoultz to be quiet and go back into the clubhouse.

---

1. No citation was issued to the motorcyclist for that or any other offense.

When the other motorcyclist attempted to hand his jacket to Shoultz, Mayhew grabbed it because he believed it might contain a weapon or drugs. A brief tug-of-war ensued, which Mayhew won.

When Shoultz did not stop yelling at Mayhew or go back into the clubhouse, Mayhew decided to arrest Shoultz based on the belief that his yelling constituted resisting law enforcement because it was interfering with Mayhew's investigation of the other motorcyclist's alleged unsafe start. Mayhew directed the other motorcyclist and Shoultz to put their hands on the wall of the clubhouse. The other motorcyclist readily complied, but Shoultz was not agreeable. At this point, Shoultz began asking what he had done wrong and why he was being asked to place his hands on the wall. Mayhew responded by telling Shoultz that if he did not keep his hands on the wall, he would be sprayed with pepper spray. He then sprayed Shoultz in the left eye, which made Shoultz even angrier and more vocal, though he still did not keep his hands on the wall. Mayhew then warned Shoultz that he would hit him with his metal flashlight, which was fifteen to eighteen inches long and bigger around than a billy club, if he did not cooperate. When Shoultz still refused to cooperate, Mayhew hit him twice with the flashlight. He first struck Shoultz in the back of his leg, and after a last warning, struck him in the head, finally causing him to fall to the ground.

Because Shoultz was bleeding profusely from his head, Mayhew called for an ambulance. Back-up officers then arrived on the scene, who helped to place handcuffs and leg shackles on Shoultz. While Shoultz was being restrained, he thrashed about on the ground and kicked Mayhew once in the shin. Shoultz was taken to a hospital, where he initially refused treatment but was eventually "sweet talked" into allowing the staff to suture his head laceration. Record p. 4.

Shoultz was charged with battery as a class A misdemeanor because it was alleg-edly committed against a law enforcement officer, resisting law enforcement as a class A misdemeanor, and disorderly conduct, a class B misdemeanor. Following a bench trial on December 13, 1999, Shoultz was found guilty of resisting law enforcement and disorderly conduct but was acquitted of battery on the basis that the kicking of Mayhew was part of the resisting law enforcement conviction. This appeal ensued.

## Analysis

### I. Resisting Law Enforcement

Shoultz presents his challenge to the resisting law enforcement conviction as one based upon the sufficiency of the evidence. However, the development of his argument focuses primarily on an allegation that because Mayhew used excessive force against him, he had a privilege to resist Mayhew. We agree with Shoultz' excessive force claim and hold that it requires reversal of this conviction.

Indiana Code Section 35–44–3–3(a) provides that:

A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer . . .

commits resisting law enforcement, a Class A misdemeanor. . . .

The word "forcibly" modifies "resists," "obstructs" and "interferes;" it does not only modify "resists." *Spangler v. State*, 607 N.E.2d 720, 723 (Ind.1993). Thus, the forcible nature of a defendant's resistance, obstruction, or interference is an essential element of the offense that the State is required to prove at trial. *Miller v. State*, 634 N.E.2d 57, 60 (Ind.Ct.App.1994). A person "forcibly resists" law enforcement when he or she uses strong, powerful, violent means to evade a law enforcement official's rightful exercise of his or her

duties; such means include the making of threatening gestures toward the official. *Spangler*, 607 N.E.2d at 723–24.

■ It is evident from the definition of "force" that Officer Mayhew incorrectly believed that he had probable cause to arrest Shoultz for resisting law enforcement based on Shoultz' verbal protests to his presence on Grim Reaper property and his investigation of the other motorcyclist's alleged unsafe start. Although the tirade Shoultz directed at Mayhew was profane, there is no indication that he verbally threatened Mayhew in any fashion. Rather, in Mayhew's own testimony he stated that although he felt Shoultz was "badgering" him, Shoultz never threatened him with force or violence, and the tirade "wasn't physical whatsoever." Record p. 102.

To support Shoultz' conviction on this count, the State directs us to evidence that after being knocked to the ground by a blow to the head, Shoultz writhed, thrashed about, and kicked Mayhew as the officers attempted to handcuff and shackle him. Even though we accept this version of the facts and will not consider Shoultz' contention that the officers continued to strike him even after he had been knocked to the ground, we reverse.

■ The general rule in Indiana is that "a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Casselman v. State*, 472 N.E.2d 1310, 1315 (Ind.Ct.App.1985) (quoting *Williams v. State*, 160 Ind.App. 294, 311 N.E.2d 619, 621 (1974)); *see also*

*Fields v. State*, 178 Ind.App. 350, 382 N.E.2d 972, 975–76 (1978). Thus, under that rule it is immaterial whether Shoultz' purported arrest for resisting law enforcement was supported by probable cause.[2]

■ However, in a circumstance such as this, the rule that a citizen may not resist a peaceful, though illegal, arrest was not "intended as a blanket prohibition so as to criminalize any conduct evincing resistance where the *means used* to effect an arrest are unlawful." *Casselman*, 472 N.E.2d at 1316 (emphasis in original). We recently reiterated this principle in *Adkisson v. State*, 728 N.E.2d 175, 178 (Ind.Ct. App.2000), where we reversed the defendant's resisting law enforcement conviction on insufficiency of the evidence grounds because an officer had made an illegal entry into a residence to effect an arrest, and thus the officer was not "lawfully engaged in the execution of his duties" when the defendant resisted arrest. While *Casselman* and *Adkisson* both dealt specifically with resistance to illegal, unconstitutional entries, we believe their reasoning applies equally to claims that an officer has used unconstitutionally excessive force in effecting an arrest,[3] in the absence of evidence that the force used to resist an officer's excessive force was not itself disproportionate to the situation. *See Adkisson*, 728 N.E.2d at 179 (stating that a citizen has the right to *reasonably* resist an unlawful entry).

■ Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment to the United States Constitution and its

---

**2.** However, both *Williams* and *Fields,* from which the rule was derived, were interpreting the predecessor statute to the present resisting law enforcement statute that became effective in 1977. The prior statute criminalized resistance against any "officer [who] is engaged in the execution of any of the duties of such peace or police officer." Ind.Code § 35–21–4–1 (1976). Noticeably absent in that statute is the adverb "lawfully" modify-

ing "engaged," which appears in the present statute.

**3.** Shoultz advances a corollary argument that he had a privilege to resist Mayhew because Mayhew had illegally entered private property. Shoultz fails to cite authority for or develop his argument that Mayhew had illegally entered private property; thus we will not consider that issue.

"reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Because the Fourth Amendment test of reasonableness is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396, 109 S.Ct. at 1872. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}\!/_{20}$ vision of hindsight. *Id.* However, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. 490 U.S. at 396–97, 109 S.Ct. at 1872.

 Here, consideration of the *Graham* factors compels the conclusion that the force Officer Mayhew used against Shoultz was objectively unreasonable and unconstitutionally excessive. First, although Shoultz was loud and argumentative, Mayhew himself testified that Shoultz never threatened him with any force or violence. Also, no other persons were being argumentative and uncooperative with Mayhew at the Grim Reaper club, which might have legitimately increased Mayhew's apprehension. Rather, the motorcyclist who was being investigated for an unsafe start was cooperating with Mayhew and was attempting to get Shoultz to cooperate; another motorcyclist had originally been outside but went in the clubhouse on Mayhew's order and no one else was outside. Second, there is no evidence that Shoultz or anyone else ever touched Mayhew before Mayhew used the pepper spray and flashlight to subdue Shoultz. There is also no evidence in the record

that Shoultz made any threatening gestures toward Mayhew. Third, it appears from the record that Mayhew never informed Shoultz that he was going to be arrested before Mayhew began using force against Shoultz. Mayhew testified that he could not remember advising Shoultz that he was being placed under arrest; Shoultz and the other motorcyclist, the only other witnesses to these events, testified that Mayhew had not informed Shoultz that he was under arrest. Fourth, Mayhew had not attempted to handcuff Shoultz before he began using force. Fifth, the purported crime for which Mayhew was attempting to arrest Shoultz was resisting law enforcement, a class A misdemeanor. Although we do not derogate the seriousness of such an offense, we note that it is not a felony, and under the circumstances present here there was no basis for concluding Shoultz had committed a crime at that point. We also find it relevant that Mayhew was attempting to arrest Shoultz because of his interference in Mayhew's investigation of the other motorcyclist's alleged unsafe start, a class C infraction under Indiana law. Ind.Code §§ 9–21–8–23 and 9–21–8–49.

 Finally, we believe it is appropriate to consider the sound guidelines for the use of force set forth by Mayhew's employer, the Evansville Police Department, in determining whether the amount of force he used against Shoultz was objectively reasonable. *See Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir.1995) (holding that although police department guidelines do not create a constitutional right, they are relevant to the analysis of unconstitutionally excessive force). The Department's Standard Operating Procedures state that "[u]se of nonlethal force by an officer is permitted in situations where the officer is attacked or resisted by someone using nonlethal force. . . . Only that amount of force necessary to overcome an attack or physical resistance will be used." Record p. 130–J. Furthermore,

"[a]ll officers will avoid blows to the head unless absolutely necessary. A metal flashlight or any similar device will not be used as a nightstick except when absolutely necessary." Record p. 130–N. Here, at no time prior to Mayhew's use of force did Shoultz forcibly resist Mayhew in any way and thus there is no justification under the guidelines for the force Mayhew used against Shoultz. Moreover, we cannot conclude that it was "absolutely necessary" to strike Shoultz in the head with a large metal flashlight in the absence of any kind of actual or threatened physical attack upon Mayhew.

After Shoultz was knocked to the ground, he thrashed about and at some point kicked Mayhew once in the shin. There is no evidence that this kick caused any bodily injury. Shoultz' resistance at this point appears under the circumstances to have been not out of proportion to the force used against him moments before. We believe excessive force was used against a person who never verbally or physically threatened Mayhew with harm, who was not forcibly resisting law enforcement or attempting to escape, who was being arrested (though this was not verbalized by Mayhew) for interfering with the investigation of a class C infraction. There is insufficient evidence that Mayhew was lawfully engaged in the performance of his duties because he used excessive force against Shoultz. Because Shoultz' response to that force was reasonable, his conviction for resisting law enforcement is reversed.

## II. Disorderly Conduct

Shoultz next claims that there is insufficient evidence to support his disorderly conduct conviction because the State presented no evidence that anyone other than the police officers at the scene overheard Shoultz' profanity-laced tirade. The State responds that the conviction is supported by Shoultz' yelling at Mayhew and its interference with Mayhew's investigation of the other motorcyclist. We hold that the Indiana Constitution and precedent of our supreme court dictate reversal of this conviction.

Article I, Section 9 of the Indiana Constitution provides that "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." Indiana Code Section 35–45–1–3(2), under which Shoultz was convicted, provides that "A person who recklessly, knowingly, or intentionally ... makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct, a Class B misdemeanor."

We apply a two-step inquiry when reviewing the constitutionality of an application of the disorderly conduct statute. First, we must determine whether state action has restricted a claimant's expressive. activity. Second, if it has, we must decide whether the restricted activity constituted an "abuse" of the right to speak. *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind.1996). The first prong of this inquiry may be satisfied by a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation. *Johnson v. State*, 719 N.E.2d 445, 449 (Ind.Ct.App.1999). As for the second prong, when reviewing the State's determination. that expression was an "abuse" of the free speech right under the Indiana Constitution, we are typically only required to find that the determination was rational. *Whittington*, 669 N.E.2d at 1369.

However, if a claimant's speech giving rise to a disorderly conduct conviction is political, the State must demonstrate that it has not materially burdened the claimant's opportunity to engage in political expression. *Id.* Such expression is not materially burdened if the State produces evidence that the speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Id.* at 1370. To demonstrate the

requisite level of harm, there must be evidence that the speech caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. *Price v. State*, 622 N.E.2d 954, (Ind.1993). Evidence of mere annoyance or inconvenience is insufficient. *Id.*

 Expressive activity is political, for purposes of the responsibility clause of Article I, Section 9 of the Indiana Constitution, if its point is to comment on government action, including criticism of the conduct of an official acting under color of law. *Whittington*, 669 N.E.2d at 1370. The *Whittington* court expressly rejected an earlier statement of this Court that pure political expression "does not include speech directed at a police officer who is attempting to perform his duties or enforce a statute." *Id.* (quoting *Radford v. State*, 640 N.E.2d 90, 94 (Ind.Ct.App. 1994)). "In contrast, where an individual's expression focuses on the conduct of a private party—including the speaker himself or herself—it is not political." *Id.* Thus, the speaker's defense of his or her own conduct to a police officer is not political, although a conviction for disorderly conduct requires proof of "unreasonable noise" both before and after an official warning. *Id.* We must judge the nature of expression by an objective standard, and the burden is on the claimant to demonstrate that his or her expression would have been understood as political. *Id.* If the expression is ambiguous, we must conclude the speech was non-political and review the constitutionality of a disorderly conduct conviction under standard rationality review. *Id.*

 Here, in support of its assertion that Shoultz made unreasonable noise that justified his disorderly conduct conviction, the State directs us to the fact that his "loud yelling and cursing disrupted Officer Mayhew's lawful investigation" of the other motorcyclist. Appellee's Brief pp. 6–7. It is true that disorderly conduct convictions have been previously upheld on the

basis that a defendant's speech was unreasonably loud because it interfered with a police investigation. *See Whittington*, 669 N.E.2d at 1371; *Johnson*, 719 N.E.2d at 449. However, those cases were decided under a rationality standard of review after it was first determined that the defendants were not engaged in political expression. To affirm Shoultz' disorderly conduct conviction on the ground that he interfered with a police investigation, as the State proposes, we must first conclude that his speech was non-political. We cannot so conclude.

In *Whittington*, our supreme court determined that the defendant was not engaged in political expression when his loud speech interfered with police investigation of a domestic complaint involving the defendant, where the defendant testified that his remarks were not directed toward the investigating officer, and he was professing his own innocence and claiming that other witnesses were lying. *Whittington*, 669 N.E.2d at 1370–71. In *Johnson*, another panel of this Court concluded that the evidence indicated a juvenile was commenting on his own conduct and was not engaged in political expression when he told a police officer, in an unreasonably loud manner, that he would not comply with certain probation conditions. *Johnson*, 719 N.E.2d at 449.

The present case, however, is much more analogous to the facts and circumstances of *Price*. There, the defendant was found to have engaged in political speech when she screamed profanities at a police officer while objecting to the arrest of a third party, which the State conceded constituted a protest about the legality and appropriateness of police conduct. *Price*, 622 N.E.2d at 956–57, 961. Price's conviction for disorderly conduct was reversed due to the absence of evidence that residents in the surrounding neighborhood suffered any more than a fleeting annoyance by her speech, although the tirade took place in the early morning hours and it caused some individuals to look out their

doors to see what was happening. *Id.* at 964.

Here, the noise the State claims was unreasonable was Shoultz' tirade directed against Officer Mayhew after he entered Grim Reaper property to investigate the other motorcyclist's alleged unsafe start. Shoultz, using admittedly colorful language, asked Mayhew why he was there; asked what the problem was and why Mayhew was "hassling" the other motorcyclist; demanded to know whether Mayhew had a warrant to be on the property; and requested that Mayhew leave if he did not have a warrant. After Shoultz refused Mayhew's requests to be quiet and re-enter the clubhouse, Mayhew decided to arrest Shoultz, purportedly for resisting law enforcement. Only at this time, when Mayhew was attempting to effect Shoultz' arrest, did Shoultz' comments begin to focus on his own conduct as he started asking Mayhew what he had "done wrong." Record p. 174. We believe it is clear pursuant to *Whittington* and *Price* that the speech Shoultz engaged in prior to his arrest, and which the State relies upon to support his disorderly conduct conviction, was protected political expression. Although we do not approve of the way in which Shoultz chose to express himself, nor do we believe it was wise for him to do so in such a loud and profane manner, his speech was directed to the legality and appropriateness of police conduct toward a third party and constituted criticism of an official acting under color of law.

■ The State, then, was required to produce evidence that Shoultz' speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Whittington*, 669 N.E.2d at 1370. No such evidence was presented in this case. The only evidence presented by the State on the issue of the loudness of Shoultz' tirade was the testimony of Mayhew, who only focused on the effect of the tirade on him personally but made no statements at all as to its effect on residents of the area surrounding the Grim Reaper clubhouse.[4] Thus, there is even less evidence here than in *Price* that any nearby resident was caused actual discomfort. We are, therefore, required to reverse because there is insufficient evidence to support a conviction for disorderly conduct that would be consistent with Article I, Section 9 of the Indiana Constitution.

## Conclusion

The conclusion we reluctantly reach acknowledges that some in our society can be obnoxious, profane, and difficult for police to deal with. These individuals, however, enjoy the protections of the United States and Indiana Constitutions on an equal level with other members of society. We reverse Shoultz' conviction for resisting law enforcement on the basis that Officer Mayhew used unconstitutionally excessive force immediately prior to Shoultz' resistance, and thus there was insufficient evidence that Mayhew was lawfully engaged in the execution of his duties at that time. We reverse the disorderly conduct conviction on the grounds that the noise alleged by the State to be unreasonably loud was political speech by Shoultz and the State produced insufficient evidence that private interests were adversely affected by the speech as required by the Indiana Constitution in such a case.

Reversed.

RILEY, J., and BAILEY, J., concur.

---

**4.** The area surrounding the clubhouse was a commercial-residential area. Although there were apparently private residences behind the clubhouse, it was also next door to a "strip bar" and across the street from a library and farmer's market.