# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MARK R. REGNIER**
Bingham Farrer & Wilson P.C.
Elwood, Indiana

ATTORNEYS FOR APPELLEE:

**ANGELA WARNER SIMS**
Hulse, Lacey, Hardacre, Austin, &
Sims, P.C.
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARQUIS DAYVON BROOKS, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1110-CT-1045 |
| | ) | |
| ANDERSON POLICE DEPARTMENT, | ) | |
| CITY OF ANDERSON, and | ) | |
| CHRIS BARNETT, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Judge
Cause No. 48C01-0804-CT-432

**September 24, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

The old adage, with which many of us are familiar, "you can't put an old head on young shoulders,"[1] seems fitting to the young man in the instant case. Nevertheless, his failure to make wise choices does not preclude him from having his day in court where the factfinder is entitled to determine whether the consequences he endured as the result of his unwise choices exceeded the bounds of the law.

In this case, a young man and his friend were at a local teen nightclub into the early morning hours when gunshots were fired. Sensing trouble, he and his friend decided to leave immediately; however, they were quickly pursued by a police officer who was attempting to locate those responsible for the gunshots. Although there was no evidence linking the young man to the shooting incident, he had been drinking while underage, smoking marijuana, and was driving without a license. Consequently, he led the police on a high-speed vehicular chase that ended when the young man struck the side of a residence with his vehicle.

The young men fled on foot. The friend was apprehended quickly, but the young man hid in a shed until other police officers, including a police dog arrived. The police dog was permitted to apprehend the young man, who was down on the ground in the shed. During the apprehension, the young man sustained a bite to his arm and a severe laceration to his scrotum.

---

[1] For those unfamiliar with the old proverb, it means "you can't expect a young person to have the wisdom or maturity associated with older people." Oxford University Press, http://oxforddictionaries.com (last visited August 29, 2012).

The young man brought suit against the city, the police department, and the police officer who was in control of the police dog. Summary judgment was granted in favor of the city, the police department, and the police officer. We conclude that this was error, inasmuch as there are many genuine issues of material fact, including whether this young man was already secured when the police dog was permitted to bite him again, causing the severe laceration to his scrotum.

Appellant-plaintiff Marquis Dayvon Brooks appeals from the trial court's order granting summary judgment in favor of appellees-defendants the Anderson Police Department, the City of Anderson, and Officer Chris Barnett (collectively, "the Appellees"). More particularly, Brooks argues that summary judgment was inappropriate because there are genuine issues of material fact regarding whether Officer Barnett violated the Reasonable Force Statute[2] by permitting his police dog to bite Brooks during his arrest. Additionally, Brooks contends that a violation of the Reasonable Force Statute precludes the Appellees from alleging immunity under the Indiana Torts Claims Act.[3] Concluding that there are genuine issues of material fact, we reverse the decision of the trial court and remand for further proceedings.

---

[2] Ind. Code § 35-41-3-3.

[3] Ind. Code § 34-13-3-3. The Appellees do "not disagree with Brooks' argument that excessive force in making an arrest is not shielded from liability under the Indiana Tort Claims Act." Appellees' Br. p. 7. Accordingly, we need not address this argument.

3

At approximately 2:00 a.m. on December 24, 2006, the Anderson Police Department received a report that gun shots had been fired at Togo's, a nightclub for teens. Brooks was at Togo's that night, but he and his friend, Josh Robinson, decided to leave after the shots were fired. Brooks and Robinson left Togo's in a 1994 white Dodge Spirit with Brooks driving.

Officer Tommy Fedrick was dispatched to Togo's, where a witness pointed out a vehicle traveling away from the location, which was later identified as a 1994 white Dodge Spirit. Officer Fedrick followed the vehicle in an attempt to locate the suspect who had fired the shots.

As Brooks was driving away from the club, he noticed an Anderson Police Department vehicle following him. When Officer Fedrick activated his red and blue lights, Brooks pulled to the side of the street but then pulled back onto the street and proceeded without stopping. Officer Fedrick activated his siren, attempting to stop the vehicle once more; however, Brooks immediately accelerated at a high rate of speed. As Officer Fedrick pursued the vehicle, he saw it leave the ground when it struck a bump in the road.

Although Brooks was fleeing law enforcement, there was no evidence that he was connected to anyone involved in the shooting or had knowledge of who was involved in the shooting. Brooks, however, had been drinking while underage, smoking marijuana, and was driving without a license.

4

Eventually, a door on Brooks's vehicle opened and struck a street sign at an intersection. The vehicle proceeded back onto the street, but it came to a stop after crashing into the corner of a house. After the vehicle struck the house, Brooks and Robinson immediately exited the vehicle and ran toward an alley behind the house that the vehicle had struck. Officer Fedrick and Officer Mark Naselroad, who arrived a short time later, caught Robinson, whose pants had become entangled in a chain-link fence.

Officer Barnett was aware that officers had been sent to Togo's, where shots had been fired and was en route to that area when he heard Officer Fedrick report that a witness had pointed out a vehicle leaving the area whose occupants may have been involved in the shooting. He heard Officer Fedrick as he attempted to stop the vehicle and was aware that the vehicle had crashed into a house, sending the occupants fleeing on foot. When Officer Barnett arrived at the scene where the vehicle had crashed into the residence, Robinson had already been apprehended and taken into custody, but Brooks was still at large.

Because of the nature of the situation, Officer Barnett deployed his K-9 partner, Rex, a Belgian Malinois.[4] In searching for Brooks, Officer Barnett went into an alley with Rex on a six-foot leather leash. When Officer Barnett came to a dilapidated shed in the alley, Rex gave a hard pull towards the shed. It was dark and Officer Barnett could

---

[4] According to the website of the American Kennel Club, the Belgian Malinois "is an alert, high-energy breed, popular as both a police and military working dog" that is "sometimes mistaken for the German Shepherd Dog." American Kennel Club, http://www.akc.org/breeds/belgian_malinois/ (last visited August 24, 2012).

5

not see, but he knew from his training and experience with Rex that someone was in the shed.

Officer Barnett claims that he gave three verbal warnings: "Anderson Police Department K-9. Make yourself known. We'll search with the dog. You will get bit." Appellees' App. p. 29. Brooks, however, stated during his deposition that he heard a dog barking and then a knock on the door. The door was immediately pushed open, and three police officers entered. Although Brooks did not comply with Officer Barnett's commands, Brooks stated that when Officer Barnett opened the door to the shed, he put his hands up and told Officer Barnett that he surrendered. A struggled ensued, during which Brooks was injured by Rex. Brooks claims that Officer Barnett ordered Rex to apprehend Brooks even though he had surrendered. More particularly, according to Brooks:

> The dog immediately grabbed me, and I was in there tussling around with the dogs [sic]. So Officer Barnett, he comes up, pushed me down, punched me, and then two more officers come up, grab me, hold me down, and that's when the dog, he had came up and bit me on my arm. And then I said, "Get the dog off of me. Get the dog off of me. I give up. I give up." They held me down, and that's when the dog came and bit me in my testicles.

Appellant's App. p. 71. Indeed, after suffering a dog bite to the arm, Brooks sustained a severe scrotal laceration from another dog bite.

The entire time that Rex was biting Brooks, he was never off his six-foot leather leash and was under the verbal control of Officer Barnett. There were at least three

officers in the shed when Rex bit Brooks. Officers had already surrounded the shed at the time the incident occurred.

On April 22, 2008, Brooks filed a complaint against the City of Anderson, the Anderson Police Department, and Officer Chris Barnett, alleging intentional tortious conduct and negligence. On July 18, 2008, the Appellees filed an answer and jury demand, and on December 22, 2009, the trial court granted Brooks's motion to amend his complaint.

On August 16, 2010, the Appellees filed a motion for summary judgment. On December 2, 2010, Brooks filed his response along with his supporting brief and designated evidence, which included the deposition testimony of Brooks and Officer Barnett, affidavits, and the Anderson Police Department's General Orders regarding the use of K-9 units.

On October 21, 2011, following a hearing, the trial court entered its ruling granting the Appellees' motion for summary judgment. Brooks now appeals.

DISCUSSION AND DECISION

Brooks argues that the trial court erred by granting the Appellees' motion for summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Spudich v. N. Ind. Pub. Serv. Co., 745 N.E.2d 281, 289 (Ind. Ct. App. 2001). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting

7

conflicting inferences on such an issue." Id. at 290. We review the grant or denial of a motion for summary judgment de novo. N. Ind. Pub. Serv. Co. v. U.S. Steel Corp., 907 N.E.2d 1012, 1018 (Ind. 2009).

Brooks maintains that there are genuine issues of material fact regarding whether Officer Barnett used excessive force by allowing Rex to attack him. The Reasonable Force Statute provides in relevant part that "[a] law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest." Ind. Code § 35-41-3-3(b). Any claim that excessive force was used by a police officer when making an arrest is analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. Shoultz v. State, 735 N.E.2d 818, 823-24 (Ind. Ct. App. 2000).

Because the Fourth Amendment reasonableness standard does not lend itself to a precise definition or mechanical application, the facts and circumstances of each individual case require careful attention. Id. at 824. Relevant considerations are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Additionally, the reasonableness standard in an excessive force case is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" on the scene, rather than with the benefit of 20/20 hindsight. Id.

8

In Shoultz, a panel of this Court determined that an officer had used excessive force by spraying pepper spray in Shoultz's left eye and striking him twice with a metal flashlight that was fifteen to eighteen inches long, once in the back of the leg and the second time in the head, causing profuse bleeding. Id. at 822. In analyzing whether the officer had used excessive force, the Shoultz Court considered six circumstances: 1) Shoultz never threatened the officer with force or violence; 2) there was no evidence that Shoultz made any threatening gestures or touched the officer before the officer subdued him with pepper spray and the flashlight; 3) it appeared that the officer never informed Shoultz that he was under arrest before he began using force; 4) the officer had not attempted to handcuff Shoultz before using force; 5) the alleged crime for which the officer was attempting to arrest Shoultz for was a misdemeanor; 6) the Evansville Police Department's Standard Operating Procedures provided for the use of nonlethal force where the officer is attacked or resisted, but that only the amount necessary to overcome the attack or resistance should be used. Id. at 824. Moreover, all officers were to avoid blows to the head unless absolutely necessary, and a flashlight or similar device was not to be used except when absolutely necessary. Id. at 825. Shoultz did not forcibly resist the officer, and accordingly, there was no justification for the amount and the method of force that the officer used against Shoultz. Id.

In this case, Officer Barnett stated in his February 4, 2010 deposition that when he approached the shed where Brooks was hiding, Rex indicated that someone was there, but that he was unsure if the person in the shed was the same individual who had fled

9

from Officer Fedrick. Appellant's App. p. 57, 62. Officer Barnett explained that he gave three announcements, "Anderson Police Department K-9. Make yourself known. We'll search with the dog. You will get bit." Id. at 64.

Officer Barnett acknowledged that Brooks was not running, but rather, was lying on the ground and that the shed was essentially secured. Id. at 65. Rex entered the shed first on a six-foot leather leash followed by Officer Barnett. Officer Barnett further stated that although Brooks was not following any of his commands, he was not making any threatening motions towards him. Id. at 57. Rex apprehended Brooks, during which, Rex pulled down Brooks's sweat pants, "trying to bite any part of the body that was exposed." Appellees' App. p. 43. According to Officer Barnett, during the struggle, Brooks tried to push Rex away, which Officer Barnett "took [] as a threat," even though he saw no weapons in Brooks's hands as he pushed the dog away. Id.

Furthermore, Brooks stated during his March 18, 2010 deposition that he was in the shed for about twenty-five to thirty minutes when he heard a dog barking and then a knock on the door. Appellant's App. p. 72. The door was immediately pushed open and three police officers entered. Id. Brooks stated that he put his hands up and told them that he surrendered; however, Officer Barnett told Rex to apprehend him. Id. More particularly, as stated above, Brooks described the event as follows:

> The dog immediately grabbed me, and I was in there tussling around with the dogs [sic]. So Officer Barnett, he comes up, pushed me down, punched me, and then two more officers come up, grab me, hold me down, and that's when the dog, he had came up and bit me on my arm. And then I said, "Get the dog off of me. Get the dog off of me. I give up. I give up."

10

They held me down, and that's when the dog came and bit me in my testicles.

Appellant's App. p. 71. Thus, after suffering a dog bite to the arm, Brooks then sustained another dog bite to his scrotum, all while he was on the ground. To be sure, while Officer Barnett and Brooks may not agree on many details of what occurred that night, they do agree that Brooks was on ground when Rex apprehended him, causing severe injury.

Additionally, the Anderson Police Department had promulgated general orders regarding the general use of K-9 units. For instance, Order II E 3 provides, in part, that the "K-9 handler will give a verbal warning to a fleeing suspect before the canine is released." Id. at 44. Similarly, Order II E 4 directs that "K-9 handlers will insure that their canines do not engage criminal suspects if they are not resisting, fleeing, or endangering the public's well being." Id. Likewise, Order II E 8 states that the Anderson Police Department is responsible for any civil suits and judgments which may occur as a result of the use of the canine, and Order II D 1 dictates that K-9 units will not be deployed on juveniles unless they are violent or thought to be armed and have committed a felony or serious misdemeanor. Id. at 45.

As stated above, because the reasonableness standard of the Fourth Amendment is not capable of precise definition and mechanical application, we must look carefully at the individual circumstances in this case. When doing so and comparing them to the circumstances in Shoultz, where it was determined that excessive force was used, we

11

conclude that there is a genuine issue of material fact as to whether Officer Barnett used excessive force when he permitted his K-9 partner, Rex, to apprehend Brooks in such a manner that Brooks sustained a severe scrotal laceration. Indeed, even to answer this ultimate question, the fact-finder will be confronted with other factual questions, such as whether Officer Barnett gave a proper warning before entering the shed, whether Officer Barnett had a reasonable belief that Brooks was armed, whether Brooks immediately surrendered when the police entered the shed, and whether Brooks was already secured when Rex was permitted to bite Brooks's scrotum after biting his arm, just to name a few. But this only bolsters our conclusion that summary judgment was inappropriate under these facts and circumstances. Accordingly, we reverse the trial court's order granting the Appellees' motion for summary judgment and remand for further proceedings.

Reversed and remanded.

ROBB, C.J., concurs and BRADFORD, J., concurs in result without opinion.

12