**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 08 2014, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN C. PETERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1311-CR-982 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Becky Pierson-Treacy, Judge
The Honorable Steven Rubick, Magistrate
Cause No. 49F19-1207-CM-52301

**September 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Steven C. Peters appeals his convictions for Class A misdemeanor criminal trespass,[1] Class A misdemeanor resisting law enforcement,[2] and Class B misdemeanor disorderly conduct.[3] He raises three issues which we consolidate and restate as whether the State presented sufficient evidence to sustain his convictions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the morning of July 31, 2012, Peters sought assistance at the emergency room of St. Vincent's Hospital. Peters was treated, and his physician discharged him from the hospital after a social worker had also cleared Peters. The attending nurse presented Peters with his discharge paperwork so that he could leave the hospital, but Peters refused to leave. Peters became very angry and began cursing and yelling. The nurse reiterated five or six times that Peters must leave and finally called for hospital security.

Special Deputies Kevin Danforth, Robert Coffer, and Damon Love responded. Deputy Danforth informed Peters at least seven times that Peters must leave the hospital or be arrested for criminal trespass. Hoping for a peaceful outcome, the deputies told Peters that they would assist him to the hospital lobby in a wheelchair so that Peters could wait for a taxi to take him home.

---

[1] *See* Ind. Code § 35-43-2-2. We note that, effective July 1, 2014, a new version of this and the other statutes involved in this appeal were enacted. The substance of the statutes remained the same.

[2] *See* Ind. Code § 35-44.1-3-1.

[3] *See* Ind. Code § 35-45-1-3.

Peters would not seat himself in the wheelchair and had to be assisted. As the deputies wheeled Peters out of the treating room, Peters jumped out of the chair and yelled, "I'm not fucking going!" *Tr.* 67. Peters partially lifted the wheelchair off of the floor in an attempt to throw it at the deputies, but the wheelchair was too heavy for Peters to throw, and he dropped it. Peters then leaned forward and put his clenched fists in the air in a fighting stance. Deputy Danforth felt that Peters was approaching to hit him. The deputies advised Peters that he was under arrest and rushed to contain Peters before he could throw any punches. Peters began to flail his arms, and he moved his arms "against" the deputies who were attempting to contain him, all the while loudly yelling profanities. *Tr.* at 47. Once the deputies handcuffed Peters, he stiffened his body and refused to walk. Peters also attempted to "back-walk" away from the deputies. *Id*. at 71. Because Peters was wearing socks but not shoes, the deputies were able to use Peters' bent arms to slide him along the floor to their office.

The State charged Peters with criminal trespass, resisting law enforcement, and disorderly conduct. The trial court found Peters guilty of all charges and sentenced Peters to an aggregate sentence of ninety days. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

Peters argues on appeal that the State failed to prove the charges against him. Our standard of reviewing claims of sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or assess witness credibility. *Id*. We consider conflicting

3

evidence most favorable to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

## Criminal Trespass

In order to prove that Peters committed criminal trespass, the State was required to prove that Peters, "not having a contractual interest in the property, knowingly or intentionally refus[ed] to leave the real property of another person after having been asked to leave by the other person or that person's agent" Ind. Code § 35-43-2-2(b)(2). The evidence most favorable to the trial court's judgment is that Peters had been discharged from the hospital after being treated. The attending nurse asked Peters several times to leave and eventually called for hospital security when Peters refused. The deputies who responded also asked Peters to leave multiple times and informed him that he would be arrested for criminal trespass if he did not leave the hospital. When the deputies escorted Peters to the lobby so that he could wait for a taxi to take him home, Peters jumped out of his wheelchair and again voiced his intention not to leave. We conclude that this evidence proves that Peters committed criminal trespass.

Peters contends that he did not knowingly or intentionally commit criminal trespass because he was confused, he was only told to leave the emergency room, not the hospital itself, and because he was prevented by officers from leaving. "A person acts 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."

Ind. Code § 35-41-2-2(a). "A person acts 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). The evidence presented at trial was that Peters repeatedly yelled, "I'm not fucking going!" at the nurse and at the deputies. *Tr.* at 67. This permits a reasonable inference that Peters was not confused about what he was being asked to do, namely, to leave. The deputies told him that they were taking him to the lobby so that he could wait for a taxi, and Deputy Danforth told Peters that he was not to return to the hospital's property unless he was seeking medical treatment. The trial court reasonably concluded from this evidence that Peters was being asked to leave the hospital and not simply the treatment room. Since it was Peters who jumped from the wheelchair as he was being escorted to the lobby, the evidence showed that it was he, and not the deputies, who prevented him from leaving. The State met its burden of proof that Peters acted at least knowingly, if not intentionally, when he refused to leave the hospital. Peters essentially asks us to ignore our standard of review on appeal by reweighing evidence and reassessing witness credibility, something we cannot do. *Drane*, 867 N.E.2d at 146.

### Resisting Law Enforcement

Next, Peters argues that his resisting law enforcement conviction cannot stand because the State failed to show that he used sufficient force to resist the deputies. A person who knowingly or intentionally forcibly resists a law enforcement officer while the officer is lawfully engaged in the execution of the officer's duties commits resisting law enforcement. Ind. Code § 35-44.1-3-1(a)(2). Our Supreme Court recently summarized what constitutes forcible resistance for purposes of the resisting law enforcement statute as

5

follows:

> So in summary, not every passive-or even active-response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence. Moreover, the statute does not require commission of a battery on the officer or actual physical contact-whether initiated by the officer or the defendant.

*Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013). Pulling away from officers has been found to constitute forcible resistance. *See Lopez v. State*, 926 N.E.2d 1090, 1094 (Ind. Ct. App. 2010), *trans. denied*; *see also J.S.*, 843 N.E.2d 1013, 1017 (Ind. Ct. App. 2006), *trans. denied*. Likewise, stiffening the body and refusing to walk are acts sufficiently forcible to support a resisting conviction. *See Johnson v. State*, 833 N.E.2d 516, 519 (Ind. Ct. App. 2005); *Guthrie v. State*, 720 N.E.2d 7, 8 (Ind. Ct. App. 1999), *trans. denied.*

The evidence most favorable to the trial court's judgment is that, as the deputies were in the process of handcuffing Peters, he moved his arms "against" the deputies, he stiffened his body, refused to walk, and attempted to "back-walk" from the deputies. *Tr.* at 47, 71. Officer Danforth testified that it was necessary for the deputies to use their strength to guide Peters to their office, further contributing to a reasonable inference that Peters forcibly resisted. *See Lopez*, 926 N.E.2d at 1094 n.1. This evidence was sufficient to prove that Peters resisted the deputies.

Peters's reliance on *Graham v. State*, 903 N.E.2d 963 (Ind. 2009), is unavailing. *Graham* is factually distinguishable, as Graham simply refused to present his hands for

handcuffing.  *Id*. at 965-66.  Peters did much more than that.  *Berberena v. State*, 914 N.E.2d 780 (Ind. Ct. App. 2009), *trans. denied*, is equally distinguishable in that "there [was] no evidence that [Berberena] stiffened his arms or otherwise 'made threatening or violent actions' to contribute to the struggle."  *Id*. at 782 (citing *Ajabu v. State*, 704 N.E.2d 494, 496 (Ind. Ct. App. 1998)).  Peters stiffened his entire body.

Peters also contends that his resisting law enforcement conviction cannot stand because the deputies used excessive force to arrest him.  This Court began addressing such claims as part of a sufficiency of the evidence review in *Shoultz v. State*, 735 N.E.2d 818 (Ind. Ct. App. 2000), *trans. denied*.  The *Shoultz* court reasoned that an officer could not have been lawfully engaged in the execution of his duties during the arrest, as required by the resisting statute, if that officer used excessive force.  *Id*. at 823.  The *Shoultz* court analyzed the excessive force claim[4] under a Fourth Amendment reasonableness standard which examines the facts and circumstances of the case, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight.  *Id*. at 823-24.  Furthermore, the force used is judged under the objective perspective of a reasonable officer on the scene.  *Id*. at 824.  The court found excessive force where, among other things, the arresting officer pepper sprayed Shoultz and hit him twice with a large flashlight even though Shoultz never threatened the officer with violence, he never touched the officer or made threatening gestures, the officer had not informed Shoultz that he was

---

[4] In applying that standard, the *Shoultz* court cited *Graham v. Conner*, 490 U.S. 386 (1989), which was a federal civil rights case brought under § 1983 of the United States Code, and was not one which arose out of a claim of sufficiency of the evidence.

being arrested, and the officer had not attempted to handcuff Shoultz before using force. *Id*.

On appeal, Peters does not direct us to any precedent with similar facts and circumstances to his case, and we have found none. With *Shoultz* and *Graham* in mind, we note that Peters was disrupting a busy emergency room where other patients were receiving care. He attempted to throw his wheelchair at the deputies and took a fighting stance against them, whereupon he was informed that he was under arrest. Thus, Peters posed a threat to officers and actively resisted arrest after being told arrest was imminent. The trial court heard Peters's version of events, that the deputies "tackled" him and caused him pain while sliding him on his socks to their office, *tr*. at 140-41, and found Peters guilty of the charge anyway. We will not second guess the weight the trial court ascribed to that evidence, nor will be reassess Peters's and the deputies' credibility. *Drane*, 867 N.E.2d at 146. As such, we conclude that the deputies did not use excessive force to arrest Peters.

### Disorderly Conduct

Peters also challenges the evidence supporting his disorderly conduct conviction. In order to make its case on this charge, the State was required to show that Peters recklessly, knowingly or intentionally engaged in tumultuous conduct.[5] Ind. Code § 35-45-1-3(a)(1). Peters's sole contention on appeal pertaining to this conviction is that the State did not prove that he engaged in tumultuous conduct. "'Tumultuous conduct' means conduct that results in, or is likely to result in, serious bodily injury to a person or

---

[5] The State's charging information alleged that Peters engaged in fighting or tumultuous conduct. *Appellant's App*. at 24. At trial, the State argued that Peters had engaged in tumultuous conduct. *Tr*. at 159.

substantial damage to property." Ind. Code § 35-45-1-1. Tumultuous conduct has been found where a student threw down the objects in his hands in a manner intended to show that he was ready to fight a school administrator, clenched his fists, and stepped towards the administrator. *Bailey v. State*, 907 N.E.2d 1003, 1007 (Ind. 2009). Evidence that Bailey clenched his fists and that the administrator felt that the student was ready to hit him was sufficient to show that serious bodily injury was likely to result. *Id.*

Here, the evidence most favorable to the trial court's judgment is that Peters attempted to throw a wheelchair at the deputies and only abandoned that act when the chair proved too heavy. Peters persevered by taking a fighting stance with his body leaning forward, fists raised and clenched. The evidence further showed that Peters's "arms were up like he was going to harm somebody," *tr.* at 21, and that Deputy Danforth felt that Peters was preparing to strike him. We find these actions to be sufficiently analogous to *Bailey* to affirm Peters's conviction.

Affirmed.

BAKER, J., and ROBB, J., concur.