## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2017, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Erin L. Berger
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roman Allen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 7, 2017

Court of Appeals Case No.
87A05-1606-CR-1277

Appeal from the Warrick Circuit Court

The Honorable Greg A. Granger, Judge

Trial Court Cause No.
87C01-1501-CM-4

**Baker, Judge.**

Roman Allen was convicted of Resisting Law Enforcement,[1] a Class A Misdemeanor. He argues that the State did not offer sufficient evidence to prove that he resisted law enforcement, or, in the alternative, he was privileged to resist the arresting officers because they used excessive force against him. Finding sufficient evidence and no privilege, we affirm.

# Facts[2]

On January 2, 2015, Abbigail Roy was working as a bartender at the Southside Bar in Boonville. Allen was at the bar that night and started arguing with another customer, and Roy asked them to stop. When they continued to argue, Roy asked them to leave the bar, and Allen left. He then returned, saying that he needed to use the restroom. When Allen exited the restroom, a woman approached him, and he told the woman "to get out of his face." Tr. p. 6. At some point during the night, someone said, "he can pull his [gun] faster than you can pull yours."[3] *Id.* at 8. Another employee who was at the bar but not working called the police.

---

[1] Ind. Code § 35-44.1-3-1(a)(1).

[2] Oral argument took place on Thursday, February 16, 2017, at Ivy Tech Community College in Indianapolis. We thank the school's administration, faculty, and students for their hospitality and thoughtful post-argument questions. We also thank counsel for their informative arguments.

[3] During direct examination, Roy testified, "I was told that he can pull his faster than you can pull yours. That's all I was told, and then somebody said—." Tr. p. 8. She testified that she did not know who said it.

During cross-examination, counsel asked Roy, "But, is it true, ma'am, that you heard, he can pull his faster than you can pull yours? That's something that you heard?" *Id.* at 15. Roy testified, "I did not hear that. Somebody came up and told me that, and that's how the police got called was because somebody overheard that and said it to me, and said that she was going to call the police. I never heard that for myself." *Id.*

[3]     Chandler Police Officer Matthew Tevault was dispatched to the Southside Bar. Once inside, he unholstered his weapon and ordered Allen and another man to show him their hands. Allen did not comply, instead keeping his hands in his pockets as he began approaching Officer Tevault with a dazed look. When Allen was within three feet of Officer Tevault, he put his hands up and continued to advance. Officer Tevault then kicked Allen's sternum "to try to gain distance from him," holstered his weapon, and "began to go hands on with him." *Id.* at 32. Officer Tevault grabbed Allen's left arm near his wrist and tried to escort him to the ground. The floor was slick, making it hard for Officer Tevault to gain control of Allen. He gave knee strikes to Allen's mid-thigh to try to get him to the ground. At some point, Officer Dalton Spaulding arrived and tried to subdue Allen. Officer Spaulding grabbed Allen, who pulled away, causing Officer Spaulding to slam into a vending machine.

[4]     The officers told Allen that he would be tased if he did not comply. When Allen did not do as ordered, Officer Tevault tased him for a five-second cycle. Officer Spaulding tased him at the same time. While tasing Allen, Officer Tevault told him to put his hands behind his back as soon as the tasing was over. Instead of complying, Allen rolled onto his side, looked at Officer Tevault, and tucked his hands underneath himself. Officer Spaulding told Allen that if he did not put his hands behind his back, he would be tased again. Officer Tevault then tased Allen for a second five-second cycle, after which Allen put his hands behind his back, and Officer Spaulding handcuffed him.

[5] On January 2, 2015, the State charged Allen with resisting law enforcement, a Class A misdemeanor. A bench trial took place on April 22, 2016, and the trial court took the matter under advisement. On April 25, 2016, the trial court issued an order finding Allen guilty, and entered a conviction against him. On May 20, 2016, the trial court sentenced Allen to twelve months at the Warrick County Security Center, with all of the sentence suspended to non-reporting probation except for five weekends.

## Discussion and Decision

[6] Allen argues that there was insufficient evidence to convict him of resisting law enforcement, and that even if he did resist, he was privileged to do so because the officers used excessive force against him during his arrest.

## I. Sufficiency of the Evidence

[7] Allen argues that the State did not present sufficient evidence to support his conviction. When considering a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We will affirm if the probative evidence and the reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.* To convict Allen of resisting law enforcement, the State needed to prove beyond a reasonable doubt that Allen knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer or a person

assisting the officer while the officer was lawfully engaged in the execution of his duties.  I.C. § 35-44.1-3-1(a)(1).

[8]     Our Supreme Court has considered the elements of this crime, noting that the word "forcibly" modifies "resists, obstructs, or interferes" and that force is an element of the offense.  *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009) (discussing *Spangler v. State*, 607 N.E.2d 720 (Ind. 1993)).  An individual "'forcibly resists'" when "'strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.'"  *Id.* (quoting *Spangler*, 607 N.E.2d at 723).  The force involved does not need to rise to the level of mayhem.  *Id.*  "It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive."  *Spangler*, 607 N.E.2d at 724.

[9]     Here, Allen forcibly resisted the officers as they tried to place him on the ground and handcuff him.  The evidence shows that when Officer Tevault told Allen to show his hands, Allen did not comply and began approaching Officer Tevault with his hands in his pocket, which made Officer Tevault consider Allen a threat.  Even when Allen did put his hands up, he continued to advance on the officer.  Officer Tevault kicked Allen to get some distance and gave knee strikes to Allen's mid-thigh to get him to the ground, but Allen still did not comply.

[10]    Had these actions been the only ones that Allen took during the incident, this case might be different.  However, as Officer Tevault tried to put Allen on the ground, Allen pulled away from him and tried to stay on his feet.  When Officer

Spaulding grabbed Allen, Allen's movements made Officer Spaulding slam into a vending machine. We find that this movement constitutes a strong and powerful act used to evade the officers. Accordingly, sufficient evidence supports Allen's resisting law enforcement conviction.

## II. Privilege to Resist

Allen next argues that if he did resist the officers, he was privileged to do so because they used excessive force against him during his arrest. The general rule in Indiana provides that a private citizen may not use force to resist a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties, regardless of whether the arrest in question is lawful. *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000). But that general rule was not intended to "criminalize any conduct evincing resistance where the *means used* to effect an arrest are unlawful." *Id.* (emphasis original).

Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment to the United States Constitution and its "reasonableness" standard. *Id.* at 823-24 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The reasonableness standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 824. Whether a particular use of force was reasonable must be judged from the

perspective of a reasonable officer on the scene. *Id.* In an excessive force case, the reasonableness inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

[13] In this case, we find that the officers' behavior was objectively reasonable, and therefore constitutional, because Allen's behavior was threatening to the officers. The officers were called specifically because Allen had a verbal altercation with another patron and someone suspected that Allen had a gun. Allen did not comply with Officer Tevault's commands to show his hands, and Allen walked toward him with a dazed look—this behavior was threatening enough to Officer Tevault that Officer Tevault tried to distance himself from Allen by kicking him in the sternum. Following this kick, Officer Tevault and Officer Spaulding continued to struggle to gain control of Allen. At one point, Allen caused Officer Spaulding to slam into a vending machine. Even after being tased, Allen did not put his hands behind his back as he was directed to do. In sum, Allen was actively resisting arrest. Considering this evidence, we cannot say that the force the officers used to subdue Allen was excessive.

[14] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.