v.

**STATE of Indiana, Appellee.**

No. 49A02–0506–JV–478.

Court of Appeals of Indiana.

March 21, 2006.

Katherine A. Cornelius, Marion County Public Defender Agency, Appellate Division, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, J.S., was adjudicated a delinquent child for committing Resisting Law Enforcement as a Class A misdemeanor[1] if committed by an adult, and Disorderly Conduct as a Class B misdemeanor[2] if committed by an adult. Following a dispositional hearing, the juvenile court placed J.S. on probation and entered a parental participation order. Upon appeal, J.S. claims that there was insufficient evidence to support her adjudication for either resisting law enforcement or disorderly conduct, and that the court erred in ordering a parental participation order.

We affirm in part and reverse in part.

On November 10, 2004, Officer Antonio Hairston was stationed as a school police officer at Northwest High School when he observed J.S.,[3] who was in a crowded hallway, grabbing a boy's hair and "smacking him with an open hand" three times across his face. Tr. at 11. Officer Hairston testi-

---

1. Ind.Code § 35–44–3–3 (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–45–1–3 (Burns Code Ed. Repl.2004).

3. The parties stipulated to J.S.'s date of birth, July 4, 1988. J.S. was sixteen at the time of the February 23, 2005 denial hearing.

fied that he "assume[ed] that it could have been a fight" and intervened by grabbing J.S. by the upper arm and attempting to separate her from the students in the hall. Tr. at 11. According to Officer Hairston, J.S. tried to "pull[ ] away" and "jerk[ ] away" from him, telling him to get away from her, to get his hands off of her, and not to touch her. Tr. at 11. Officer Hairston testified that after his efforts to remove J.S. from the hallway failed, he attempted to place J.S. under arrest and put her in handcuffs. This, too, was made difficult by J.S.'s continuing efforts to pull away from Officer Hairston. According to Officer Hairston, at one point, J.S. positioned herself and her hands next to a recessed bathroom doorway in the hall such that he needed the assistance of Officer April Swhear to handcuff her. J.S. sustained an abrasion to her upper left shoulder area in the incident.

Officer Swhear testified that when she came upon the scene she observed Officer Hairston struggling to handcuff J.S. and that J.S. was "flailing her arms," "squirming her body," and "making it impossible for him to hold her hands." Tr. at 20. According to Officer Swhear, J.S.'s arms were "swinging in any direction." Tr. at 21. Officer Swhear assisted Officer Hairston by placing J.S.'s arm behind her back.

J.S. testified that she did grab a boy by his hair and hit him in the face, but that she was doing this in a playful manner as a response to his hitting her on her bottom moments before. J.S. testified that she tried multiple times to tell Officer Hairston that the two of them were "just playing," not fighting, but that Officer Hairston would not listen to her. Tr. at 41.

Cynthia Crayton, a classmate of J.S.'s who witnessed the incident, testified that J.S. was hit on her bottom by a boy before she hit him back. Crayton also testified that J.S. "yank[ed]" herself from Officer Hairston as he grabbed her arm and was trying to get ahold of her. Tr. at 26.

Daneesha George, also a classmate of J.S.'s, testified that she too observed a boy "grab[ ]" J.S.'s bottom, prompting J.S. to hit him, all of which George testified was "playing." Tr. at 29. George testified that J.S., who was saying, "[W]e was just playing," pulled away from Officer Hairston, but did not "yank away," in an attempt to free her arm. Tr. at 30. According to George, Officer Hairston "slammed" J.S. up against the wall and placed her in handcuffs. Tr. at 30.

On November 12, 2004, the State charged J.S. with resisting law enforcement and disorderly conduct. At the close of the February 23, 2005 denial hearing, the court adjudicated J.S. delinquent based upon resisting law enforcement and disorderly conduct if committed by an adult. On March 17, 2005, Probation Officer Shannon Shinn filed a petition seeking parental participation of J.S.'s mother, Doris Gilbert. Following an April 6, 2005 dispositional hearing, the court released J.S. under the supervision of the probation department,[4] provided for several conditions of probation, and entered a parental participation order.

Upon appeal, J.S. argues the evidence was insufficient to establish either disorderly conduct or resisting law enforcement. In making this argument, J.S. claims that the officer's mistaken belief about J.S.'s flirtatious behavior is not evidence of fighting to support an adjudication for disorderly conduct, and that J.S. did not use the strong, powerful or violent means to evade a law enforcement official necessary to support the resisting law enforcement adjudication.

---

4. The court set a Probation Review Hearing for July 11, 2005 for purposes of considering extension or closure.

When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *J.R.T. v. State,* 783 N.E.2d 300, 302 (Ind.Ct.App. 2003), *trans. denied.* Upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. *Id.* We will neither reweigh the evidence nor judge witness credibility. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

Indiana Code § 35–45–1–3 provides, in pertinent part, that "[a] person who recklessly, knowingly, or intentionally ... engages in fighting or in tumultuous conduct ... commits disorderly conduct." J.S.'s charge for disorderly conduct specified that she was "fighting at school." Appendix at 8. A "fight," which is not statutorily defined, is described as a "[h]ostile encounter; either physical or verbal in nature." BLACK'S LAW DICTIONARY 565 (5th ed.1979). In entering a true finding based upon the crime of disorderly conduct, the trial court found, "[T]he only issue is whether or not what the respondent did ... to [the boy] constitutes fighting or not. [I]n her testimony she hit him two or three times [which in] this court[']s opinion [is] fighting." Tr. at 47.

We are not convinced that the evidence demonstrates beyond a reasonable doubt that J.S. was "fighting" and thus committed disorderly conduct. The court appeared to find that the mere act of hitting constitutes "fighting" per se, negating the requisite element of hostility necessary for the finding of "fighting." There was scant evidence in the record that J.S.'s actions were hostile. The only evidence presented by the State tending to establish this element was Officer Hairston's testimony that he "assume[ed] that it could have been a fight." Tr. at 11. We do not believe that an officer's assumption about an individual's actions, without more, establishes her motivations beyond a reasonable doubt. Certainly there are numerous situations, such as the one argued in this case, in which the acts of hitting and hair pulling are very plausibly not acts of hostility.

Further, there was a great deal of evidence in the record that J.S.'s actions were, in fact, not hostile. J.S. and both of her witnesses, Crayton and George, testified that J.S. and the boy were "playing," and that her actions were in response to the boy's hitting her on the bottom. Tr. at 25, 29, 42. No evidence besides Officer Hairston's assumption to the contrary contradicted their accounts. Given the lack of evidence from the hearing to establish that J.S. was acting with hostility toward the boy,[5] and was therefore "fighting" with him as charged, we conclude there was insufficient evidence to support the disorderly conduct adjudication.[6]

---

5. The focus of the hearing was more upon the resisting law enforcement charge than the disorderly conduct charge.

6. The State argues, citing *B.R. v. State,* 823 N.E.2d 301 (Ind.Ct.App.2005), that J.S. was engaged in "tumultuous conduct." In *B.R.* we affirmed a true finding of disorderly conduct where the juvenile at issue had approached students in an "obvious state of

anger" with a knife. *Id.* at 307. We first note that J.S. was specifically charged with *"fighting"*—not tumultuous conduct—in school. (Emphasis added). In any event, the evidence introduced to prove disorderly conduct was far less conclusive in this case than it was in *B.R.,* where the juvenile brandished a knife in a state of anger. In this case the State sought to prove disorderly conduct through Officer Hairston's inconclusive as-

■ J.S. further argues that there was insufficient evidence to support her adjudication based upon resisting law enforcement. In arguing that there was insufficient evidence of resisting law enforcement, J.S. claims that resistance to an officer's conduct must be forceful under Indiana law and that J.S.'s conduct did not rise to this level of resistance. Appellant's Brief at 12–13. Under Indiana Code § 35–44–3–3, a person commits the crime of resisting law enforcement if she knowingly or intentionally "forcibly resists, obstructs, or interferes with a law enforcement officer" who is engaged in the execution of his duties.

Evidence at trial included Officer Hairston's testimony that J.S. "pulled" and "jerked" away from him; Officer Swhear's testimony that J.S. was "flailing her arms," "squirming her body," and "making it impossible for [Officer Hairston] to hold her hands"; Crayton's testimony that J.S. "yanked away" from Officer Hairston; and George's testimony that J.S. "pulled away" from Officer Hairston. Tr. at 11, 20, 25, 30. We have previously interpreted Indiana Code § 35–44–3–3 as not requiring the application of an "overly strict definition of 'forcibly resist.'" *Johnson v. State,* 833 N.E.2d 516, 519 (Ind.Ct.App.2005) (affirming a conviction for resisting law enforcement where defendant turned and pushed away from arresting officers and "'stiffened up'" when they attempted to place him into a transport vehicle). Given the evidence that J.S. flailed her arms, pulled, jerked, and yanked away from Officer Hairston, we conclude there was sufficient evidence to uphold J.S.'s adjudication based upon the crime of resisting law enforcement.[7] *See id.*

J.S. further claims upon appeal that the trial court erred in entering a parental participation order. The State argues that most of the statutory requirements for such an order were met but concedes that "it does not appear from the record that the parents were ever advised of their right to contest or dispute an order making them financially responsible for certain costs." Appellees's Brief at 8 n. 1. The State further concedes that such a failure has previously been ruled to be fatal to the validity of an order. *See S.S. v. State,* 827 N.E.2d 1168, 1172 (Ind.Ct.App.2005), *trans. denied.*

■ Sentencing decisions are committed to the sound discretion of the trial court and will only be reversed upon a showing of a manifest abuse of discretion. *M.T. v. State,* 787 N.E.2d 509, 514 (Ind.Ct.App. 2003). An abuse of discretion involves a decision that is clearly against the logic

---

sumption that J.S. was fighting, which does not support a finding beyond a reasonable doubt that J.S.'s hitting and hair pulling resulted in, or were likely to result in, serious bodily injury to a person or substantial damage to property under Indiana Code § 35–45–1–1 (Burns Code Ed. Repl.2004), especially in light of the fact that all of the remaining testimony on that point was that J.S. was just "playing."

7. To the extent J.S. argues that Officer Hairston's actions constituted excessive force which she was justified in resisting, we note the general rule in Indiana is that a private citizen may not use force for purposes of resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties, regardless of whether the arrest in question is lawful. *Shoultz v. State,* 735 N.E.2d 818, 823 (Ind.Ct.App.2000), *trans. denied.* Although exceptions to this rule have been created in cases where an officer uses unlawful means to effect an arrest, it does not appear that Officer Hairston, who grabbed J.S. by the arm and struggled with her to handcuff her, used illegal means on the level of an illegal residential entry or unconstitutionally excessive force to effect her arrest, and in any event, J.S. does not develop her argument to that effect. *See id.* at 823–24.

and effect of the facts and circumstances before the court. *Id.*

We have previously concluded that clear statutory requirements must be met before a juvenile court may affirmatively order the participation of a parent in a disposition order. *Id.* These requirements include the filing of a proper verified petition. *See* Ind.Code §§ 31–37–15–1 through 3 (Burns Code Ed. Repl.2003). If a proper verified parental participation petition is not filed, a juvenile court does not have jurisdictional authority over a parent and cannot order parental participation. *M.T.*, 787 N.E.2d at 515.

■ First of all, with respect to the validity of the order as it pertains to J.S.'s father, Jerry Senter, we note that the petition for parental participation named only J.S.'s mother, Doris Gilbert. The petition did not name Senter, even though the parental participation order which followed named both Gilbert and Senter. As none of the statutory requirements were followed with respect to Senter, we conclude the order cannot be binding upon him.

■ Secondly, with respect to the validity of the order as it pertains to Gilbert, there is no evidence in the record that the juvenile court advised Gilbert of her right to contest allegations concerning her participation and financial responsibility [8] as provided for in Ind.Code § 31–37–12–6 (Burns Code Ed. Repl.2003). The State concedes this point. It is error for the juvenile court not to advise a juvenile's mother of her rights regarding the effects of adjudication, including the right to dispute allegations which concern participation and financial responsibility. *M.T.*, 787 N.E.2d at 515–16. This is so even in cases where the mother agrees to participate in probation as Gilbert did here, and such error is fatal to the validity of the parental participation order. *S.S.*, 827 N.E.2d at 1172; [9] *M.T.*, 787 N.E.2d at 515–16. Accordingly, we conclude the parental participation order was also invalid with respect to Gilbert and should be set aside.

Of course, common sense dictates that both parents would be well-advised to monitor J.S. and ensure that she adheres to the conditions of her probation. Both parents indicated their willingness to assist J.S. at the disposition hearing. It appears J.S.'s mother enrolled her in a nine-week substance abuse counseling session at Midtown Counseling following this incident, which she completed, and that she has overseen J.S.'s drug screens as well. The parents are to be commended for their

---

8. In *S.S.*, our court determined that the juvenile court's failure to advise Mother of her right to contest financial responsibility was harmless error because the court did not include a provision in the parental participation order requiring Mother to be financially responsible. 827 N.E.2d at 1172–73. Here, the court did not order Gilbert to reimburse Marion County for the expenses of services for J.S., but it did order that she inform the probation officer as to "plans for the payment of fees." App. at 42, 46. In light of the court's failure to inform Gilbert as to her right to contest participation requirements, which in and of itself invalidates the order, we deem it unnecessary to determine whether the court's ordering Gilbert to set up a payment plan qualifies as an order of financial responsibility.

9. We recognize that the concluding paragraph in *S.S.*, which states, "[T]o the extent that the juvenile court erred in failing to inform Mother of her right to contest the parental participation order, such error was harmless," appears to contradict the holding two paragraphs above it which states that the "juvenile court's error in failing to advise Mother of her rights was not harmless." *S.S.*, 827 N.E.2d at 1172–73. We follow the holding, which is supported by several citations to authority, and presume the statement in the concluding paragraph was inadvertent.

participation and are encouraged to continue it.

The judgment of the juvenile court is affirmed in part and reversed in part, and the cause is remanded with instructions to the juvenile court to vacate its true finding of disorderly conduct and to set aside the parental participation order.

KIRSCH, C.J., and DARDEN, J., concur.