**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ROBERT W. SPRINGSTON**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED

Oct 12 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| T.H., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A05-1203-JV-119 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Mary Ellen Diekhoff, Judge
Cause No. 53C05-1005-JD-404

**October 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

T.H. appeals from the trial court's adjudication of him as a juvenile delinquent, the court having found him to have committed rape and criminal deviate conduct against S.C. T.H. raises three issues for our review, which we consolidate and restate as: 1) whether there was sufficient evidence to support the court's determination, and 2) whether T.H. made a reasonable mistake as to S.C.'s consent. Concluding that there was sufficient evidence to support the trial court's findings, we affirm.

## Facts and Procedural History

On May 1, 2010, S.C., a sophomore in high school, returned home around dinner time after helping her grandmother paint. S.C. lived with her mother and three brothers; her mother was not home when S.C. returned from helping her grandmother, but her three brothers were. When she got home, S.C. went straight to her bedroom to take a nap. When she woke up, T.H. was standing in her room. S.C. had first seen T.H. about a month before; T.H. would sometimes come to the neighborhood and play basketball at the goal that was next to S.C.'s house. S.C. had talked to T.H. on a couple of occasions, but thought of T.H. more as an acquaintance than a friend. S.C. did not invite T.H. into her room on May 1. T.H. was thirteen years old at the time.

When she woke up, S.C. was lying on her stomach in her bed. She asked T.H. what he was doing in her room, but he did not respond. The two carried on a casual conversation for a few minutes, and then S.C. asked T.H. to leave her room. She asked him to leave several more times, but T.H. refused. T.H. then came over to her, grabbed one of her arms, and tried to roll her onto her back. S.C. struggled to keep T.H. from turning her over, but eventually he succeeded. T.H. then grabbed S.C.'s shorts and pulled

2

them off, and proceeded to perform oral sex on S.C. Next, T.H. grabbed S.C.'s wrists and held them above her head. He pulled his own shorts down and attempted to penetrate S.C. S.C. again struggled to fight T.H. off, but T.H. continued to hold her wrists above her head, and T.H. was able to penetrate S.C. once.

At that point, S.C.'s older brother Jacob opened the door to S.C.'s bedroom then backed out and closed the door. T.H. got off of S.C., pulled his pants back up, and ran out past Jacob, who was coming back into the room to check on S.C. Jacob testified that he initially backed out and closed the door because he "felt like [he] was breaking privacy or something." Transcript at 52. However, he turned around to go back in because "it didn't feel right" and S.C.'s face had looked "red and not happy." Id. When Jacob went back into S.C.'s room, he found S.C. putting on pants and crying. When Jacob asked her what was wrong, S.C. said that she did not want it to happen and she had told T.H. no. After he let S.C. cry for a while, Jacob took her downstairs to find their other two brothers, Michael and William. Because S.C. "looked really hurt," Jacob wanted to get everyone together to figure out what to do. Id. at 54. When Jacob went outside to look for William, T.H was outside and he tried to apologize to S.C. Back at the house, S.C.'s grandmother dropped by, and eventually S.C's mother and the police were called.

When the police questioned T.H., he changed his story several times when police were unable to verify his alibis. At first he said he was never at S.C.'s apartment complex. Then he said he had been at the complex but was not inside S.C's apartment. Then he said he had been inside the apartment, but not on May 1. Finally he said that he

3

had been inside the apartment on May 1, but that S.C. had invited him in and the two had consensual sex.

T.H. was alleged to be a delinquent child, and after a fact-finding hearing, the court adjudicated T.H. as a delinquent and found that he committed what would have been rape and criminal deviate conduct had he been an adult. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I. Standard of Review

The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. West v. State, 755 N.E.2d 173, 185 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable trier-of-fact could have found the defendant guilty beyond a reasonable doubt. Id. Likewise, whether the defendant made a mistake of fact is a question for the trier-of-fact. Saunders v. State, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006), trans. denied. On appeal, we review mistake of fact by the same standard applied when sufficiency of the evidence is challenged, and we will uphold the conviction if there is substantial evidence of probative value to support it. Id.

II. Sufficiency of the Evidence

In order for a juvenile to be adjudicated a delinquent child for an act that would be a crime if committed by an adult, the State must prove every element of the offense beyond a reasonable doubt. J.S. v. State, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006), trans. denied. For the rape allegation, the State needed to prove that T.H. knowingly or

intentionally had sexual intercourse with S.C. when S.C. was compelled by force or imminent threat of force. Ind. Code § 35-42-4-1(a)(1). And for the criminal deviate conduct allegation, the State needed to prove that T.H. knowingly or intentionally caused S.C. to submit to or perform deviate sexual conduct when S.C. was compelled by force or imminent threat of force.[1] Ind. Code § 35-42-4-2. T.H. claims that for both counts there was insufficient evidence to support a finding that S.C. was compelled by force or imminent threat of force. We disagree.

T.H. concedes that physical force is not necessary, and both parties point to Tobias v. State, 666 N.E.2d 68, 72 (Ind. 1996), for the proposition that the victim's perspective is the proper point of view from which to determine whether there was force or the threat of force. Force can be constructive, or can be implied from the circumstances. Smith v. State, 500 N.E.2d 190, 192 (Ind. 1986). While resistance by the victim is not required, if present it can be one indication that the act was against the victim's will. Id.

Here, there was sufficient evidence presented from which a reasonable fact finder could conclude that T.H. was guilty beyond a reasonable doubt. S.C. asked T.H. several times to leave, and he refused. S.C. resisted when T.H. grabbed her arm and tried to turn her over. Once he had turned her over, T.H. pulled S.C.'s shorts off. T.H. grabbed S.C.'s wrists and held them above her head, and she once again resisted as he penetrated her. There was more than sufficient evidence that, from S.C.'s point of view, T.H. used force or the threat of force to compel her to submit to intercourse and deviate sexual conduct.

---

[1] "Deviate sexual conduct" is defined in part as an act involving "a sex organ of one (1) person and the mouth or anus of another person." Ind. Code § 35-31.5-2-94.

Likewise, there was substantial evidence of probative value from which the fact finder could determine that T.H. did not make a reasonable mistake of fact as to S.C.'s consent. S.C. barely knew T.H., she did not invite him into her room, and she asked him several times to leave. She struggled to keep T.H. from turning her over, and struggled again as he held her hands above her head and penetrated her. According to her brother Jacob, her face was "red and not happy" when he walked in to her room and T.H. was on top of her. Tr. at 52. S.C. had told T.H. to stop, and told her brother Jacob that she did not want it to happen. T.H. ran out of the room after Jacob walked in, and T.H. later tried to apologize to S.C. The State presented sufficient evidence supporting T.H.'s guilt, and there was no substantial evidence suggesting that T.H. was reasonably mistaken that S.C. consented.

### Conclusion

Concluding that there was sufficient evidence from which the trial court could determine that T.H. was guilty beyond a reasonable doubt, and no substantial evidence suggesting that T.H. was reasonably mistaken as to S.C.'s consent, we affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.