**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 04 2012, 8:54 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | | |
|---|---|---|
| B.W., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1205-JV-421 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary Chavers, Judge Pro Tempore
The Honorable Geoffrey A. Gaither, Magistrate
Cause No. 49D09-1203-JD-826

---

**December 4, 2012**


**MEMORANDUM DECISION - NOT FOR PUBLICATION**


**BROWN, Judge**

B.W. appeals her adjudication as a delinquent for committing acts that would constitute residential entry as a class D felony[1] and criminal mischief as a class B misdemeanor[2] if committed by an adult. B.W. raises one issue, which we revise and restate as whether the evidence is sufficient to sustain her adjudication as a delinquent. We affirm.

The facts most favorable to the adjudication follow. Terry Proctor and Zanita Bibbs lived in an apartment in Indianapolis in March 2012. Chokie Thompson had leased the apartment for Proctor, and Bibbs had lived at the apartment since November of 2011. On March 25, 2012, after Bibbs had fallen asleep in her bedroom, B.W., who was born in August 1995, and B.W.'s older sister beat on and ultimately kicked in the apartment door. Bibbs woke up and approached the door as it was "about to fall" and observed the door was kicked "one more time and it fell all the way off" its hinges. Transcript at 6. B.W. and her sister entered the apartment without permission, and Bibbs called the police. The police were able to apprehend B.W. but were unable to apprehend B.W.'s older sister.

On March 27, 2012, the State alleged that B.W. was a delinquent for committing residential entry by entering the dwelling of Bibbs and criminal mischief by causing damage to the property of Bibbs as a class D felony and class B misdemeanor if committed by an adult. The State later amended the charging information to allege that the dwelling was that of Thompson, Proctor, and Bibbs and that the damages were caused to the property of Thompson, Proctor, and Bibbs. The juvenile court adjudicated B.W. to

---

[1] Ind. Code § 35-43-2-1.5 (2004).

[2] Ind. Code § 35-43-1-2 (Supp. 2007).

be a delinquent child for committing acts that would constitute residential entry as a class D felony and criminal mischief as a class B misdemeanor if committed by an adult. The court noted B.W.'s prior delinquent adjudications for battery as a class A misdemeanor if committed by an adult and placed B.W. on standard conditions of probation for approximately three months.

The issue is whether the evidence is sufficient to sustain B.W.'s adjudication as a delinquent for committing acts that would constitute residential entry as a class D felony and criminal mischief as a class B misdemeanor if committed by an adult. When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. J.S. v. State, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006), trans. denied. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. Id. It is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." Pratt v. State, 744 N.E.2d 434, 437 (Ind. 2001).

A.      Residential Entry

The offense of residential entry as a class D felony is governed by Ind. Code § 35-43-2-1.5, which provides that "[a] person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a Class D felony."

3

"Dwelling" means a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging. Ind. Code § 35-41-1-10 (Supp. 2010) (definition now found at Ind. Code § 35-31.5-2-107 (Pub. L. No. 114-2012, § 67, 99 (eff. Jul. 1, 2012)). Thus, to adjudicate B.W. to be a delinquent for committing acts that would constitute residential entry as class D felony if committed by an adult, the State was required to prove that B.W. knowingly or intentionally broke and entered the dwelling of another person.

B.W. argues that the State "originally named only [] Bibbs as the victim of the residential entry and criminal mischief offenses," that in its amended information the State "add[ed] [] Thompson and [] Proctor as additional dwellers and property owners, joined by 'and' rather than 'or' or 'and/or.'" Appellant's Brief at 6. B.W. asserts that the State is required to prove the commission of the offense as to each named victim, that Thompson "merely leased the apartment," that "there was NO evidence presented that Thompson utilized the apartment as his home or dwelling, ie. sleeping accom[m]odation," that "the State was bound to prove that it was [Thompson's] dwelling as well as that of [Bibbs] and Proctor," and that the finding that B.W. committed residential entry must be vacated. Id. at 7.

The State maintains that the evidence was sufficient to sustain the finding that B.W. committed residential entry and that the Indiana Supreme Court "has broadly construed the term dwelling to protect 'the sanctity and security of habitation,' and these interests do not disappear just because the property owner does not sleep on the premises when the entry occurs." Appellee's Brief at 5 (citing Ferrell v. State, 565 N.E.2d 1070, 1071 (Ind. 1991) (quoting Burwell v. State, 517 N.E.2d 812, 814 (Ind. Ct. App. 1988),

reh'g denied, trans. denied)). The State further maintains that "[a]lthough a person must inhabit the building for it to qualify as a dwelling, the Indiana Supreme Court has held that the owner need not inhabit the dwelling, as long as someone inhabits it." Id. (citing Welch v. State, 509 N.E.2d 824, 825 (Ind. 1987) (citing Carrier v. State, 89 N.E.2d 74 (Ind. 1949))). The State asserts that the "evidence is sufficient to show that the apartment was inhabited as a dwelling by Bibbs and Proctor, and that Thompson, who rented the apartment for Proctor, was a proper victim." Id.

B.W. argues in reply that "[t]he issue is not whether the apartment was a dwelling, but whether it was the dwelling of all of the persons the State chose to list in the charging information," that the cases cited by the State support the argument that a dweller does not have to be sleeping at the location at the time of the offense, and that in this case "there was no evidence that [] Thompson ever spent any time at all, let alon[e] a night, at the apartment." Appellant's Reply Brief at 1-2.

B.W. does not argue that the apartment was not a dwelling. Instead, she focuses on the fact that Thompson's name was included in the charging information when it alleged that B.W. entered "the dwelling of [] Thompson, [] Proctor and [] Bibbs." See Appellant's Appendix at 34. B.W. essentially appears to assert that there is a material variance between the charging information and the evidence produced at trial which resulted in insufficient evidence to convict him as charged. See Rupert v. State, 717 N.E.2d 1209, 1211-1212 (Ind. Ct. App. 1999) (addressing the defendant's argument of whether a variance between the information and the evidence was fatal in the context of the issue of whether the evidence was insufficient to support the defendant's conviction).

To the extent that a variance exists, we note that an information must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Ind. Code § 35-34-1-2(d), and "must be sufficiently specific to apprise the defendant of the crime for which he is charged and to enable him to prepare a defense." Bonner v. State, 789 N.E.2d 491, 493 (Ind. Ct. App. 2003) (quoting Jones v. State, 467 N.E.2d 1236, 1241 (Ind. Ct. App. 1984)). "A criminal defendant has the right to be advised of the nature and cause of the accusation against him. There must be consistency between the allegations charged and the proof adduced . . . ." Simmons v. State, 585 N.E.2d 1341, 1344 (Ind. Ct. App. 1992) (citation omitted). A variance is an essential difference between proof and pleading. Allen v. State, 720 N.E.2d 707, 713 (Ind. 1999). Not all variances are material or fatal, however. Id. The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:

> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

> (2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

Mitchem v. State, 685 N.E.2d 671, 677 (Ind. 1997) (quoting Harrison v. State, 507 N.E.2d 565, 566 (Ind. 1987)).[3] In other words, to award relief on the basis of a variance

---

[3] The Court in Mitchem noted:

Applying this test is essential because it addresses two constitutional guaranties of the accused in criminal prosecutions. Part one of the test meets the requirements under Art. 1, § 13 of the Indiana Constitution which entitles defendant "to demand the nature and cause of the accusation against him, and to have a copy thereof." The second part of the test for variance meets the requirements of Art. 1, § 14 of the Indiana Constitution which provides that "no person shall be put in jeopardy twice for the same offense." See

between allegations in the charge and the evidence at trial, the variance must be such as to either have misled the defendant in the preparation and maintenance of his defense with resulting harm or prejudice or leave the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event, facts, and evidence. Winn v. State, 748 N.E.2d 352, 356 (Ind. 2001).

Here, B.W. was well aware of the alleged criminal conduct of which she was accused. B.W. does not complain that the allegations misled her in preparing a defense. Further, B.W. does not claim that she would be subject to future criminal prosecutions based upon the events or facts which led to the adjudication for this offense. Under the circumstances, we cannot say that any variance was material or prejudiced B.W. See Reed v. State, 438 N.E.2d 704, 705-706 (Ind. 1982) (noting that the information charged that the defendant entered the dwelling of Leroy Cross and that the evidence showed that Cross was neither the owner nor primary tenant of the dwelling but resided there with the primary tenant, and holding that there was "no room for confusion with regard to the premises burglarized," that "[t]he allegation that it was the property of Leroy Cross was surplusage and not misleading in any material respect," and that there was no material variance); Parahams v. State, 908 N.E.2d 689, 693 (Ind. Ct. App. 2009) (concluding that a variance was not fatal to the State's case and did not prejudice the defendant); Bates v. State, 486 N.E.2d 574, 577-578 (Ind. Ct. App. 1985) (holding that the inclusion of the

---

Madison [v. State], 234 Ind. [517,] 545-46, 130 N.E.2d [35,] 48 [(1955)] (concurring opinion of Arterburn, J., in which three other justices concurred).

685 N.E.2d at 677 n.8.

7

manager's name on the indictment for burglary in place of the true owner's name was not fatal and that there was no variance).

Further, the cases cited by the State, as noted by B.W., stand for the general proposition that a person's home or place of lodging may not lose its characterization as a "dwelling" where the person or persons who occupied the home or place of lodging had not slept or stayed there for some period of time. For instance, in Ferrell, the Court found that "[e]ven though Bond had not slept in the house for four months, he maintained his home address and telephone number there and would stop by to pick up his mail and generally check out the house on a regular basis" and thus that "[t]he victim's house constituted a 'dwelling' for purposes of the burglary statute." See Ferrell, 565 N.E.2d at 1072; see also Welch, 509 N.E.2d at 825 (holding that the victim's temporary absence did not alter the character of his apartment as a dwelling). B.W. does not argue that the apartment did not contain "those accoutrements usual to the convenience of habitation." See Ferrell, 565 N.E.2d 1072 (citing Burwell, 517 N.E.2d at 815). We cannot say that the apartment where Proctor and Bibbs resided was not a dwelling as charged or as defined by statute or that the apartment lost its characterization as a dwelling due to the fact that the evidence showed that Thompson was the lessee on the apartment's lease and did not reveal that Thompson resided at the apartment. The evidence was sufficient to show that B.W. entered "the dwelling of [] Thompson, [] Proctor and [] Bibbs," Appellant's Appendix at 34, and the inclusion of Thompson's name in the amended charging information does not require reversal.

Given the facts of the case, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that B.W. committed

acts that would constitute residential entry as a class D felony if committed by an adult. See Poore v. State, 681 N.E.2d 204, 208 (Ind. 1997) (holding that the evidence was sufficient to sustain defendant's conviction for residential entry as a class D felony).

B.    Criminal Mischief

The offense of criminal mischief as a class B misdemeanor is governed by Ind. Code § 35-43-1-2, which provides that "[a] person who . . . recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent . . . commits criminal mischief, a Class B misdemeanor."  In its amended charging information, the State alleged that B.W. "did recklessly, knowingly or intentionally, without consent, damage or deface the property of [] Thompson, [] Proctor and [] Bibbs, that is: by having damaged the entry door of their residence, causing damage in an amount less than $250.00."  Appellant's Appendix at 34.  Thus, to adjudicate B.W. to be a delinquent for committing an act that would constitute criminal mischief as a class B misdemeanor if committed by an adult, the State needed to prove that B.W. recklessly, knowingly, or intentionally damaged or defaced property of another person without the person's consent.  Property is that "of another person" if the other person has a possessory or proprietary interest in it, even if an accused person also has an interest in that property.  Ind. Code § 35-41-1-10 (definition now found at Ind. Code § 35-31.5-2-253 (Pub. L. No. 114-2012, § 67, 122 (eff. Jul. 1, 2012)).

B.W. argues that "[b]y charging in the conjunctive, the State was required to prove that the door was the property of all three (3) [Thompson, Proctor, and Bibbs] as well as the door to their residence," that Thompson and Proctor had a proprietary or possessory interest in the door, and that Bibbs, "as merely an invited guest, had neither interest in the

door." Appellant's Brief at 8-9. B.W. further argues that "[n]o evidence was presented that the door was actually damaged when it came off the hinges and fell into the apartment," that evidence did not show that "the door was so injured or harmed that its value or usefulness was affected," and that "[i]t very well could have just needed to be placed back on the hinges." Id. at 9. The State argues that the evidence shows that B.W. damaged the front door of the apartment by kicking it off its hinges, that the door would not close properly, and that a reasonable fact finder could infer property damage from the evidence. The State further argues that Bibbs had a possessory interest in the apartment as she lived there for four months. B.W. argues in reply that evidence was not presented "to prove that [Bibbs] sufficiently possessed the apartment to be able to assert control over it" and that "the State failed to prove that the door being off the hinges constituted damage." Appellant's Reply Brief at 2-3.

To the extent B.W. essentially argues that a variance exists between the charging information and the evidence produced at trial by the inclusion of Bibbs in the charging information, we note, similar to our conclusions in Part A above, that B.W. was aware of the criminal conduct alleged by the State, that B.W. was not misled in preparing a defense, and that B.W. would not be subject to future criminal prosecutions based upon the facts which led to the adjudication for this offense. Consequently, we cannot say that any such variance here was material or prejudiced B.W. Further, the record reveals that Bibbs testified that she had gone to sleep and had been awakened by beating and kicking at the door. Bibbs testified that she approached the door, noticed that it was "about to fall," and observed that the persons outside the door "kicked it one more time and it fell all the way off." Transcript at 6. Bibbs testified that B.W. and her older sister entered

the apartment without permission. Bibbs testified that B.W.'s older sister was attempting to drop off a baby who was Proctor's child. In addition, Bibbs testified that she had lived in the apartment from November 2011 until the date of the incident in March 2012.

Based upon the evidence, we cannot say that a reasonable trier of fact could not determine that B.W. damaged the entry door of the apartment and that Bibbs as well as Thompson and Proctor had a possessory or proprietary interest in the property. See Womack v. State, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) (noting that possession of title is not in itself conclusive proof of ownership and that the three primary indicia of ownership of personal property are title, possession, and control), trans. denied. Thus, we conclude that evidence of probative value exists from which the trier of fact could have found B.W. guilty beyond a reasonable doubt of acts that would constitute criminal mischief as a class B misdemeanor if committed by an adult. See Poore, 681 N.E.2d at 208 (holding that the evidence was sufficient to sustain the defendant's conviction for criminal mischief); McGuire v. State, 625 N.E.2d 1281, 1282 (Ind. Ct. App. 1993) (holding that the evidence was sufficient to sustain the defendant's conviction for criminal mischief as a class B misdemeanor).

For the foregoing reasons, we affirm B.W.'s adjudication for committing acts that would constitute residential entry as a class D felony and criminal mischief as a class B misdemeanor if committed by an adult.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.