## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 23 2015, 9:16 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Bernice A. N. Corley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

N.B.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 23, 2015

Court of Appeals Case No. 49A04-1410-JV-457

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Geoffrey A. Gaither, Magistrate

Cause No. 49D09-1407-JD-1785

**Brown, Judge.**

[1]     N.B. appeals the juvenile court's true finding that she committed a delinquent act which, if committed by an adult, would constitute auto theft as a level 6 felony. N.B. raises one issue, which we revise and restate as whether the evidence is sufficient to sustain her adjudication as a delinquent. We affirm.

## Facts and Procedural History

[2]     On the morning of July 19, 2014, Harrison Sibert and a friend traveled to a restaurant in Sibert's vehicle for breakfast and then traveled back to the home of Sibert's friend. Sibert and his friend began to walk inside but then walked back to Sibert's vehicle, a white 2004 Pontiac Grand Am, because Sibert's friend had forgotten something in the vehicle, and "that was the last time [Sibert] remember[ed] seeing [his] keys." Transcript at 5. A few hours later, Sibert could not find his car keys, and he and his friends looked "everywhere all across the apartment, outside by the car, [and] the dumpster in case [he] threw it away on accident." *Id.* at 6. Sibert thought he may have locked the keys inside his car and could not see them from the window, and he planned to attempt to use a wire hanger to enter the vehicle. However, when Sibert went outside, his vehicle was gone, and he called the police and his insurance provider.

[3]     The following day, July 20, 2014, Indianapolis Police Officer Larry Crowe and Detective Jeff Thomas heard by radio of a hit and run incident. Officer Crowe drove to the location of the individuals who had called the police about the hit and run, and as he was speaking to them about the incident, they suddenly pointed out a white Pontiac which was about two hundred yards away. Officer Crowe entered his marked police vehicle, activated the emergency lights, and

pursued the Pontiac, and Detective Thomas heard over the radio that other officers had also observed the Pontiac.

[4] Officer Crowe pulled his vehicle behind the Pontiac with his emergency lights activated and initiated a traffic stop. Detective Thomas arrived in his police vehicle, which also had its emergency lights activated, and noticed that the Pontiac was still "very, very slow rolling" and that the driver, N.B., was looking around. *Id.* at 15. Detective Thomas yelled at N.B. to stop and pulled his police vehicle in front of the Pontiac so that the Pontiac was blocked in and could not move, and N.B. then stopped the vehicle. Officer Crowe read the license plate number of the Pontiac to the control operator, exited his vehicle, and approached the driver's side of the Pontiac. Detective Thomas exited his vehicle and approached the passenger side of the Pontiac. Officer Crowe observed N.B. in the driver's seat and another female in the car, and he asked N.B. to exit the vehicle. N.B. exited the Pontiac, and Detective Thomas had the passenger also exit the vehicle.

[5] Officer Crowe noticed N.B. did not look very old and asked for her name and date of birth. N.B. initially was not cooperative, but relatively soon afterwards police learned her name and age and that the Pontiac had been reported as stolen. Police "learned that it was called a fresh deal, meaning it was done within the last day." *Id.* at 29. After police established "the newness of the steal and that they were obviously in the vehicle, they were both placed under arrest for auto theft." *Id.* at 30. N.B. "was using a lot of foul language" and yelling obscenities at people who were driving by. *Id.* at 31. N.B., speaking at a

very high volume, said "I don't give a f---what happens," "f--- all this," "this is bulls---," and "I'll be out of f---ing jail in no time and I'm going to run away again." *Id.* at 20. At one point, N.B. asked Detective Thomas "what am I being arrested for," Detective Thomas responded she was being arrested for auto theft, and N.B. said "I don't give a f---." *Id.* Detective Thomas said "[w]ell, you shouldn't be driving around stolen cars," and N.B. said "I'll drive around whatever the f--- I want." *Id.*

[6] On July 21, 2014, the State alleged N.B. was a delinquent child for an act of auto theft, which would be a level 6 felony if committed by an adult, and operating a motor vehicle without ever receiving a license, which would be a class C misdemeanor if committed by an adult. On August 12, 2014, the juvenile court held a hearing at which evidence consistent with the foregoing was presented and N.B. stipulated that she was fifteen years old. Detective Thomas indicated on cross-examination that there was no cracked steering column or broken windows, the car was not operated with a screwdriver, and the car was being driven with a set of keys. The court entered true findings as to both counts. Following a dispositional hearing, the court entered an order stating that N.B. had a prior history of delinquent adjudications including theft as a class D felony if committed by an adult, and battery and conversion as misdemeanors if committed by an adult, and ordering that N.B. be placed on probation with a suspended commitment to the Department of Correction with special conditions.

*Discussion*

[7] The issue is whether the evidence is sufficient to sustain the juvenile court's true finding that N.B. committed a delinquent act which, if committed by an adult, would constitute auto theft as a level 6 felony.[1]  When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt.  *J.S. v. State,* 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006), *trans. denied.*  In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses.  *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication.  *Id.*

[8] The offense of auto theft as a level 6 felony is governed by Ind. Code § 35-43-4-2.5(b), which provides that "[a] person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of . . . the vehicle's value or use . . . commits auto theft, a Level 6 felony."  Thus, to adjudicate N.B. to be a delinquent for committing an act that would constitute auto theft as a level 6 felony if committed by an adult, the State was required to prove that N.B. knowingly or intentionally exerted

---

[1] N.B. does not challenge the true finding that she operated a motor vehicle without ever receiving a license.

unauthorized control over Sibert's vehicle with intent to deprive the owner of its value or use.

[9] N.B. contends the State successfully proved she was in possession of a vehicle that had been previously stolen but failed to prove that she knowingly or intentionally exerted unauthorized control over the vehicle. She argues that whether property was recently stolen is determined by examination of the length of time between the theft and the possession, and also circumstances such as the defendant's familiarity or proximity to the property at the time of the theft, and the character of the good. N.B. notes that more than twenty-four hours passed between the theft and the Pontiac being found in N.B.'s possession, that "[s]o, the theft was not *recent*," and that, accordingly, N.B.'s unexplained possession of stolen property in this case is not sufficient evidence from which the trier of fact may infer she actually committed the theft. Appellant's Brief at 9. N.B. also argues that there were no broken steering columns or screwdrivers, that she provided no statement about how the car came to be in her possession, and that the State did not provide evidence of the proximity between where N.B. lived and where the vehicle was recovered.

[10] The State maintains that the evidence presented established that N.B. fled the scene of an accident in the stolen car shortly after the car was stolen, that N.B.'s "evasive behavior supports the natural and reasonable inference that N.B. committed theft," that N.B.'s "statements to police after being stopped further support the inference that N.B. knew the vehicle was stolen and that such was why she did not stop at the scene of the accident," and that "the circumstances

under which N.B. was stopped, with police taking the measure of blocking her escape path with their vehicle, also indicated N.B.'s efforts to elude police." Appellee's Brief at 6. The State also argues that N.B.'s assertion that the theft was not recent is contrary to the record, that Officer Crowe testified that police learned that it was "a fresh deal, meaning it was done *within* the last day," and that "[a] reasonable inference from the testimony is that the theft occurred within twenty-four hours of when N.B. was apprehended driving the vehicle." *Id.* at 7.

[11]     "While the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft, such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away)." *Holloway v. State*, 983 N.E.2d 1175, 1179 (Ind. Ct. App. 2013) (internal quotation marks omitted) (citing *Donovan v. State*, 937 N.E.2d 1223, 1226 (Ind. Ct. App. 2010) (citing *Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010)), *trans. denied*). The fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*; *see also Girdler v. State*, 932 N.E.2d 769, 773 (Ind. Ct. App. 2010) (noting that possession of recently stolen property is to be considered along with the other evidence in a case and the circumstances of the possession). The trier of fact must assess all of the evidence instead of focusing

upon one piece of evidence, such as possession of recently stolen property. *Id.* (citing *Donovan*, 937 N.E.2d at 1226).

[12] Further, it is well settled that a defendant may be charged with and convicted of auto theft, even if the person was not the original thief, so long as the elements of auto theft are met—the knowing or intentional exercise of control over another's vehicle, with intent to deprive the owner of the vehicle's value or use. *Girdler*, 932 N.E.2d at 771; *see also Donovan*, 937 N.E.2d at 1226 (concluding the State was not required to show that the defendant had exclusive possession of the vehicle from the time of the theft to the time of his arrest but rather the trier of fact should look at all of the evidence to determine if the defendant is guilty of the offense beyond a reasonable doubt).

[13] The evidence most favorable to the challenged true finding reveals that N.B., who was fifteen years old, was detained on July 20, 2014, driving the Pontiac that Sibert had reported as stolen on July 19, 2014. The court entered a true finding that N.B. operated a motor vehicle without ever receiving a license, and N.B. does not challenge the finding or argue that she had a valid driver's license. We note that, in stopping the Pontiac, both Officer Crowe and Detective Thomas had their emergency lights activated, that N.B. was still "very, very slow rolling," that she was looking around, and that she stopped the Pontiac only after Detective Thomas yelled at her to stop and placed his police vehicle in front of the Pontiac so that she was blocked in by the police vehicles. Transcript at 15. We further observe that N.B. was not initially cooperative in providing her name and date of birth to police. Soon afterwards, police learned

that the Pontiac had been reported as stolen and it was "a fresh deal, meaning it was done within the last day." *Id.* at 29. In addition, N.B. yelled obscenities at people who were driving by and said "I don't give a f---what happens," "f--- all this," "this is bulls---," and "I'll be out of f---ing jail in no time and I'm going to run away again." *Id.* at 20. When Detective Thomas told N.B. she was being arrested for auto theft, N.B. said "I don't give a f---," and when Detective Thomas said "[w]ell, you shouldn't be driving around stolen cars," N.B. said "I'll drive around whatever the f--- I want." *Id.*

[14] The evidence of the discovery of the Pontiac in N.B.'s possession, the proximity in time between the theft and the vehicle recovery, and N.B.'s actions and statements, taken together, is evidence from which the juvenile court as fact-finder reasonably could have concluded that N.B. exerted control over the Pontiac with intent to deprive its owner of the vehicle's value or use. *See Bond v. State*, 925 N.E.2d 773, 782 (Ind. Ct. App. 2010) (holding, where the owner's vehicle went missing sometime between January 11 and January 14 and police discovered the vehicle on January 16, that the discovery of the car at the defendant's house, the proximity in time between the theft and the vehicle recovery, and the defendant's prints together sustained an inference that the defendant exerted unauthorized control over a car with the intent to deprive the car's owner of the value and use of the car), *reh'g denied*, *trans. denied*; *Gonzalez v. State*, 908 N.E.2d 338, 341-342 (Ind. Ct. App. 2009) (noting that the defendant displayed a nervous demeanor and did not respond to questions regarding the ownership of the vehicle which had been reported stolen nearly a month before,

supporting the conclusion the defendant must have known the vehicle had been stolen).

[15] Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that N.B. committed an act that would constitute auto theft as a level 6 felony if committed by an adult.

## *Conclusion*

[16] For the foregoing reasons, we affirm the juvenile court's true finding that N.B. committed a delinquent act, which, if committed by an adult, would constitute auto theft as a level 6 felony.

[17] Affirmed.

Crone, J., and Pyle, J., concur.